## GENERAL MOTORS ACCEPTANCE CORPORATION v. HAHN.

### No. 5967.

Court of Appeal of Louisiana. Second Circuit.

May 29, 1939.

Rehearing Denied June 28, 1939.

Polk & Robinson, of Alexandria, for appellant.

A. A. Moss and Harry Fuller, both of Winnfield, for appellee.

HAMITER, Judge.

Defendant is charged in this cause, which is an action sounding in tort, with the conversion of a 1937 model Chevrolet sedan.

Plaintiff, the General Motors Acceptance Corporation, avers that it is the holder and owner of a promissory note executed by the Peoples Motor Company, Inc., of Colfax, Louisiana, which, to the amount and extent of $539.08, is secured by a vendor's lien and privilege on the mentioned sedan; that defendant, while operating under the name of the General Finance Company, took possession of and converted the automobile to his own use to the detriment of its rights therein and in utter disregard of same; and that he refuses to surrender the property or divulge the whereabouts thereof so that the lien and privilege may be enforced. It asks judgment against defendant for said sum of $539.08, together with the interest and attorney's fees stipulated in the note.

Denial is made by defendant that a vendor's lien and privilege on the car secured plaintiff's note, and also that there has been a conversion as charged.

The trial judge rejected plaintiff's demands, holding, as his written reasons for judgment show, that the asserted vendor's lien and privilege originally existed but was later lost through a sale and delivery of the sedan; and, further, that no conversion by defendant occurred. Plaintiff appealed from the judgment.

The Peoples Motor Company, Inc., was the authorized dealer of Chevrolet automobiles in the Town of Colfax, Grant Parish, Louisiana. During the latter part of the year 1936, it ordered from the Chevrolet Motor Company, a subsidiary of the General Motors Corporation, four such vehicles. These were shipped from the St. Louis, Missouri, factory on December 18, 1936, and arrived at Colfax on December 28, 1936. To obtain the necessary bill of lading and get possession of them, said dealer, through its president and manager, A. J. Tuminello, paid the local bank ten per cent of the purchase price thereof and executed in favor of the General Motors

Acceptance Corporation, the plaintiff herein and a subsidiary of the General Motors Corporation, a promissory note for the unpaid balance of $1,995.03, together with interest and a stipulated attorney's fee, and also executed an instrument termed a trust receipt. No evidence of this credit purchase was filed and recorded in the public records. Following the mentioned financial arrangement, delivery of the cars was obtained by the Peoples Motor Company, Inc. In due course of time said note and trust receipt reached their owner, the plaintiff, and appropriate settlement was had between the latter and the Chevrolet Motor Company. One of the automobiles delivered was the sedan involved in this controversy, for which unit there was due, as the trust receipt recites, the sum of $539.08.

After receiving the shipment, and on said date of December 28, 1936, a notarial act was executed by A. J. Tuminello as the representative of the Peoples Motor Company, Inc., and also by him in his individual capacity. This act recited that said company "does by these presents grant, bargain, sell, transfer, abandon and set over unto A. J. Tuminello", a new 1937 Chevrolet Deluxe Town Sedan, this being the automobile in question, for the consideration of $931, of which amount $226 is cash and the balance of $705.60 payable in eighteen monthly installments of $39.20 each; and that said deferred payments are evidenced by a certain promissory note made by the purchaser, Tuminello, and secured by a mortgage and vendor's lien on the property. This note and the notarial act, after their execution, together with other negotiable paper belonging to the Peoples Motor Company, Inc., were then carried by a salesman to the defendant's office in Winnfield, Winn Parish, Louisiana, for discount.

Hahn, the said defendant, has been in the finance business for a number of years. He operates as the General Finance Company. Many of the credit sales of the Peoples Motor Company, Inc., since the beginning of the year 1936, were financed by him. When the Tuminello contract was presented for discount, he consulted his attorney to ascertain if Tuminello, the purchaser of the car, could legally represent the dealer in the transaction. Thereafter, defendant accepted the note, and issued and delivered his check for $599,

dated December 31, 1936, to the Peoples Motor Company, Inc. He also purchased the other contracts of the dealer that were brought to him at that time.

Shortly after the issuance of these checks, information was received regarding financial trouble being experienced by the Peoples Motor Company, Inc. This prompted his telephoning the bank patronized by him and requesting that the issued checks be not paid. Then he communicated by telephone with Ira C. Hopkins, the manager of plaintiff's Shreveport office. The latter promised to meet him and discuss the matter. A telegram from Hopkins, however, dispatched at 5:53 P. M. o'clock, December 31, 1936, said, "Impossible to get there by afternoon. Will see you Monday." On January 2, 1937, said manager again telegraphed to defendant, stating, "Will meet you ten o'clock tomorrow morning." Hopkins called to see defendant on January 3, 1937, and after checking and discussing all relevant sales, returned to Shreveport. The next morning he informed defendant by telephone that all transactions appeared to be regular and that "everything would be cleared on January 5," if the checks were permitted to be paid. Thereupon, defendant released his checks, including the one given for the Tuminello note, and they were honored.

Subsequently, defendant received a letter from the insurer of the automobile objecting to the coverage. In view of this and of the information previously gained regarding the financial difficulties of the dealer, defendant instructed his attorney to institute foreclosure proceedings on the Tuminello chattel mortgage and note. The necessary pleadings were prepared and he and the attorney journeyed to Colfax on January 6, 1937, and filed the suit. Pursuant to an order issued therein, a deputy sheriff of Grant Parish seized the vehicle on that date while it was outside of the dealer's building, but on the used car lot, and placed it in storage at the Citizens Motor Company in that town. Present when the seizure was made, and having full knowledge of it, were plaintiff's said manager, Ira C. Hopkins, and another representative, and also the district manager of the Chevrolet Motor Company.

Later, Tuminello's attorney, C. H. McCain, prepared a petition to seek the enjoining of the contemplated judicial sale. Believing that an amicable settlement of the foreclosure matter would be more favorable to him than contested litigation enduring for a long period of time, defendant, through his attorney, negotiated for and finally obtained it. Tuminello was paid the sum of $100 for his equity in the car, and he executed a written release therefor. This instrument, dated January 30, 1937, was witnessed by the said C. H. McCain.

The sedan, after having been in storage and under seizure in Colfax for 25 days, was then driven to Winnfield and stored at the Max Thieme Chevrolet Company. It remained there until May, 1937, or at least three months, and was later sold by defendant.

Although plaintiff had full knowledge of the aforementioned seizure and attending circumstances, it did not intervene in the pending foreclosure proceeding to urge its claimed vendor's lien and privilege. Furthermore, the first complaint of conversion made to defendant was through a letter written by plaintiff's attorney under date of November 18, 1937.

Even if it be conceded that the note given to plaintiff by the Peoples Motor Company, Inc., was originally secured by an unrecorded vendor's lien and privilege on the automobile, which question is not herein passed upon, we are unable to say that the trial judge erred in holding that such encumbrance was extinguished before defendant's connection with the car. His ruling in that respect was prompted by a finding that a bona fide sale and actual delivery of the automobile took place between the dealer and Tuminello, and also by reason of the provisions of Civil Code, article 3227. The mentioned article provides in part: "He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, *if the property still remains in the possession of the purchaser.*"

■ A corporation is an entity separate and distinct from its officers, directors and stockholders, and the officers may purchase the corporation's property, provided the transaction is in good faith and the consideration paid is adequate. The proof herein is conclusive that the Peoples Motor Company, Inc., received the $599 paid by

defendant for the chattel mortgage note affecting the car, and it does not appear that Tuminello acted in bad faith and did not pay the cash consideration recited in the notarial act of sale. According to a salesman of said dealer, the Peoples Motor Company, Inc., the sale was regular in every respect.

On the question of the actual delivery of the sedan, defendant testifies that he observed Tuminello driving it, accompanied by three other persons, on January 4, 1937. The aforementioned salesman of the dealer states that it was "delivered to him just like it would have been delivered to anybody else. It was his own personal car." He also says, "I don't know where he carried it to. It was just like anybody else working around the garage. He would come down there in it and let it set around there and then when he went off he would use it." Opposed to such proof, is the testimony of a representative of plaintiff and the district manager of the Chevrolet Motor Company. Both say that they inspected the car on the day of the seizure, and there appeared no evidence of its having been used. Obviously, it then possessed a new car appearance, for the sale had taken place only one week previous to that time. Another witness furnished testimony of Tuminello's withstanding an operation at a hospital in Alexandria, Louisiana, about the time of the seizure, this being for the purpose of showing that no use had been made of the car. The date and duration of the hospitalization, however, is not definitely given, and this proof is therefore unsatisfactory.

In view of the possession of the automobile having passed from the dealer to Tuminello, as is disclosed by a preponderance of the evidence, plaintiff was divested of its lien and privilege thereon, if such previously existed. Civil Code, article 3227, supra.

Furthermore, we cannot disagree with the court's holding that no conversion by defendant took place. The evidence is to the effect, as above shown, that he acted in good faith, dealt openly and fairly with plaintiff at all times, and paid an adequate consideration for the negotiable paper affecting the car. On the other hand, plaintiff, through its representatives, was aware of the pending foreclosure proceeding, had ample time (25 days) to intervene therein and assert its rights but failed to do so, and even held conferences with defendant concerning the matter. The first accusation of conversion was made more than eleven months after the seizure.

Plaintiff, as the brief of its counsel recites, relies on the doctrine enunciated in Plauche-Locke Securities Inc. v. Securities Sales Co. of La., Inc., 169 La. 601, 125 So. 729. That case, which involved an action for conversion, may be easily distinguished from the instant one. As stated by the Supreme Court in its opinion therein, the principal question for decision was, "whether a creditor, who holds a chattel mortgage on property belonging to an insolvent debtor, and who has no other security, has a right of action for the value of the mortgaged property against one who, being an ordinary creditor of the mortgagor, secretly and without the knowledge of either the mortgagor or mortgagee, takes the property out of the parish where the mortgage is recorded, and conceals it, and afterwards disposes of it for his own advantage, and thereby causes the mortgagee to lose his claim." In the cited decision, as is noted from the quoted extract, the complaining creditor had no opportunity to protect its rights because the removal of the property was done secretly and without its knowledge. Here plaintiff was fully informed of defendant's actions, and was in a position to secure the protection to which it was entitled.

The case of Globe Automatic Sprinkler Co. v. Bell, 183 La. 937, 165 So. 150, cited by plaintiff, is, we think, also inapplicable. It was not an action in damages for the tortious conversion of property.

No error is found in the judgment of the trial court and it is affirmed.