486 So.2d 1079 (1986)
RICHLAND PARISH HOSPITAL SERVICE DISTRICT # 2, Plaintiff/Appellant,
v.
HANOVER INSURANCE COMPANIES, et al., Defendants/Appellees.
No. 17658-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
*1081 Thomas E. Cooper, Jr., Rayville, for Richland Parish Hosp.
Davenport, Files & Kelly by LaValle B. Salomon, Monroe, for Hanover Ins. Co.
Hayes, Harkey, Smith & Cascio by Joseph D. Cascio, Jr., Monroe, for Davenport Ins. Agency.
Snellings, Breard, Sartor, Inabnett & Trascher by Kent Breard, Monroe, for Leopold & Meredith, Inc.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a suit by a hospital to recover unpaid hospital bills. The defendants are the minor patient's tutors, the tortfeasor, her husband and their insurance company, and two insurance agencies. The right to proceed directly against the tortfeasor and the insurers is conferred by a special statute that creates a privilege but does not specify a prescriptive period. The hospital's petition went down[1] on exceptions of prescription and no cause of action. The hospital now appeals. For the reasons expressed, we affirm in part, reverse in part and remand.
The minor, Otis Richardson, was riding his bike on the street in Rayville when Mrs. Givens ran into him with her car on October 8, 1983. Otis was rushed to the plaintiff's hospital that day and there he remained until October 26. He ran up a bill of $19,450.55 that was not paid. The hospital decided to invoke its privilege on "proceeds recovered by an injured person"[2] by sending a written notice to Mrs. Givens's insurance agent on November 16 and again on December 26. On January 13, 1984, Mrs. Givens's insurer, Hanover Insurance Company, paid a settlement of $15,000 to Otis's tutor and undertutor. The hospital filed the instant suit over a year later, on January 31, 1985.
There were several defendants. First were Mr. Richardson and Mr. Tennant, the minor's tutor and undertutor. They responded with an answer and a third party demand. Next were Mrs. Givens, the tortfeasor, Mr. Givens, her husband, and Hanover, their insurance company. They responded with an answer and an exception of prescription. Next was Davenport Insurance Agency, the Givenses' insurance agent. It initially filed an exception of no right or cause of action and later added an exception of prescription. Finally was Leopold and Meredith Insurance Agency, an insurance broker that served as intermediary between Davenport and Hanover. It filed an exception of no cause of action or, alternatively, prescription.
In its exception of no right or cause of action, Davenport urged that it was not a person subject to liability under the special statute, as it was neither an injured person, his attorney, the tortfeasor, an insurance carrier nor an insurance company. It also claimed that it did not disburse any insurance proceeds to the injured person. Hanover and the Givenses next filed an exception of prescription. Their position was that the hospital's action prescribed one year after the auto accident. LSA-C.C. art. 3492. Since the suit was filed over a *1082 year after the accident, they argued that prescription had clearly run and dismissal was proper. Davenport followed with its own exception of prescription that incorporated the argument advanced by Hanover. These exceptions were set for argument on April 11, 1985. The exceptors argued the same positions as were advanced in their filings. The hospital argued that the applicable prescriptive period was three years. LSA-C.C. art. 3494(1).
While these exceptions were under advisement, Leopold filed an exception of no cause of action or prescription. Leopold claimed that its liability, if any, was based on the tort of wrongful payment of insurance proceeds to the injured person after the hospital had attempted to perfect a privilege. This tort cause of action nevertheless prescribed in one year. Since the payment was alleged to have been made on January 13, 1984 and suit was not filed until January 31, 1985, the action had prescribed.
The trial court sustained all the exceptions and dismissed the hospital's suit. It held that Davenport had not paid over any monies subject to the privilege. It did not, however, address the allegations that one of Davenport's employees had made an independent promise of payment on Davenport's behalf. On the issue of prescription, the trial court found the one year prescriptive period applicable but was apparently more persuaded by Leopold's argument than by Davenport's. It held that the hospital's right was created by the wrongful payment but that it had nevertheless prescribed. The trial court therefore granted Hanover's exception of prescription. The trial court also granted Davenport's exception of prescription, although this seems to have been unnecessary given the outcome on the no cause. Later, the trial court sustained Leopold's exceptions of no cause of action and of prescription.
The hospital has appealed, but has dismissed the appeal with respect to Leopold. Thus only the Hanover, Givens and Davenport exceptions are now before us. The hospital contends, as it did below, that the improper payment to Richardson's tutor was not a tort but rather a violation of the statute that created the privilege. It argues that the privilege is an accessory of the debt and coextensive with the debt. Thus the hospital argues that its privilege lasts until the debt prescribes in three years. LSA-C.C. art. 3494(1). It adds that its privileged status cannot be impaired by Hanover's wrongful act. In sum, the hospital wants to be able to assert its privilege for up to three years. With respect to this ruling sustaining Davenport's exception of no cause of action, it claims that the trial court should have granted leave to amend instead of dismissing the suit. LSA-C.C.P. art. 934.
The statute that creates the privilege merits close consideration. LSA-R.S. 9:4752[3] seems to be based on legal subrogation but does not confer that actual relationship. The hospital is a creditor of the patient who incurs the bill; the patient is a creditor of an insurance company that owes benefits to him; thus the hospital is granted a privilege on the sum to be paid to the patient by the insurance company. See LSA-C.C. arts. 1825, 1829. This section of the legislation, however, does not mention subrogation and does not actually create a cause of action in favor of the hospital directly against the insurer. Rather, it places a privilege on the insurer's funds *1083 before they are paid. LSA-R.S. 9:4753.[4] The privilege is not a cause of action in itself but an accessory right, a form of security for ultimate payment. LSA-C.C. arts. 1913, 3186.
The statutory scheme next makes a written notice requirement to five classes of persons: the injured person, his attorney, the tortfeasor, his insurance carrier and his insurance company. The written notice is essential to preserve the privilege, but seems to be effective only against those who receive the notice. We note that the hospital sent timely notice only to Davenport, alleging it to be Hanover's authorized agent. After the payment was made, the hospital notified "Davenport and others" of its claim.
The statute finally posits liability on any person who received the notice and nevertheless pays "monies subject to the privilege" to the injured person, thereby prejudicing the hospital's privilege.[5] This is the particular section under which plaintiff brought the instant suit. Our examination of this section, along with the hospital's petition, convinces us that the petition does not state a cause of action against Mr. and Mrs. Givens. Assuming without holding that they are persons defined in 9:4753 and they received proper notice of the privilege under 9:4754, the petition does not allege or even suggest that they participated in the wrongful payment of the proceeds. Accordingly, there is no basis for holding them liable under this statute. Although the Givenses did not raise the exception of no cause of action, we are empowered to notice it on our own. LSA-C. C.P. arts. 927, 2164; Evans v. West, 357 So.2d 916 (La.App. 2d Cir.1978). We therefore affirm, on this basis, the trial court's decision dismissing them from the suit.
The exact nature of the hospital's right upon failure to honor the privilege remains the major issue. The hospital claims it is only enforcing its privilege when it sues the insurer who made the wrongful payment. The trial court, on the other hand, found the hospital was suing in tort for wrongful payment.
The hospital's position is not correct. While the general plan of the statute is to create a privilege, it is clear that the remedy under 9:4754 is different from a privilege. By nature, a privilege is a right attached to a piece of movable or immovable property. LSA-C.C. art. 3189. Under this statute, a privilege is attached to a sum of money in the insurer's hands. Once the insurer pays the sum, it is no longer in its hands. To what could the privilege then attach? The only possible solution is that the hospital's remedy against the insurer is punitive, for negligent or intentional loss of the thing that secured the debt.
*1084 The remedy, therefore, is in tort. Our jurisprudence has long recognized that tampering with security is a tort. Plauche-Locke Securities v. Securities Sales Co., 169 La.601, 125 So. 729 (1930); Miller v. Hortman-Salmen Co., 145 So. 786 (La.App.Orl.Cir.1933); Shear v. Caracci, 245 So.2d 792 (La.App. 4th Cir.1971); cf. GMAC v. Hahn, 190 So. 869 (La.App. 2d Cir.1939). Destruction or concealment of the mortgaged property gives rise to criminal and civil liability because it impairs the creditor's security. LSA-R.S. 9:5359; Plauche-Locke Securities v. Securities Sales Co., supra. Interference with privileges or mortgages is grounds to release a surety because his subrogation rights are impaired. LSA-C.C. art. 3061; State v. Wilco Const. Co., 393 So.2d 885 (La.App. 4th Cir.1981), amended on other grounds 389 So.2d 1150 (La.App. 4th Cir.1981), writ denied 400 So.2d 905 (La.1981). For these reasons, we must agree with the trial court that the defendants' acts were tortious, even though the proscription is couched in legislation that confers a privilege.
Since the wrongful payment was a tort it is governed by one year prescription. LSA-C.C. art. 3492.[6] By the time the suit was filed, the action had prescribed on its face.
The hospital argues alternatively that prescription should not begin to run until it knew or could have known about the improper payment. This occurred on February 10, 1984, when Otis's tutor filed a petition for authority to invest the minor's funds. The instant suit, filed on January 31, 1985, was timely within this framework.
The civil code provides that prescription runs against all persons unless an exception is established by legislation. LSA-C.C. art. 3467. Under exceptional circumstances, however, courts will use the maxim, contra non valentem non currit praescriptio. This means that prescription does not run against a person who is unaware of his right. LSA-C.C. art. 3467, official revision comment (d); Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1979). Many cases hold that mere lack of knowledge is sufficient to interrupt prescription. Langendorf v. Adm'rs of Tulane Education Fund, 361 So.2d 905 (La. App. 4th Cir.1978), writ denied 363 So.2d 1384 and 364 So.2d 120 (La.1978); Bordelon v. Crutcher, 430 So.2d 1107 (La.App. 4th Cir.1983), writ denied 437 So.2d 1155 (La.1983).
The difficulty with this position is that the petition itself does not allege lack of knowledge or concealment by the defendants. If the petition had so alleged, then perhaps the hospital could have proved, with appropriate evidence, a suspension of prescription under contra non valentem. This difficulty is compounded by the fact that the petition plainly shows that prescription has run, thus shifting the burden to the plaintiff to show an interruption or suspension. Bennett v. Gen'l Motors Corp., 420 So.2d 531 (La.App. 2d Cir. 1982). At the argument on the exceptions of prescription, the hospital offered no proof whatsoever. At that time, however, no one had yet advanced the argument that one-year prescription would run from the alleged date of payment.
We are nevertheless guided by LSA-C.C.P. art. 934, which provides that when the grounds of the objection may be removed by amendment of the petition, then judgment sustaining the exception should order amendment within a reasonable *1085 delay. We think the trial court should have exercised its discretion by giving the hospital a reasonable opportunity to amend its petition and cure the defect. Smith v. Cupples Real Estate, 412 So.2d 682 (La. App. 2d Cir.1982); Royal v. Schwartz, 433 So.2d 390 (La.App. 4th Cir.1983); Finch v. Lake, 396 So.2d 391 (La.App. 1st Cir.1981). We will remand the case for that purpose.
By way of summary, we have applied this discussion to the various appellees in the following ways:
Mr. and Mrs. Givens. Since they took no part in the wrongful payment, 9:4754, there is no cause of action against them. We affirm that part of the trial court's judgment that dismissed them from the suit and we pretermit discussion of their exception of prescription.
Hanover Insurance Company. The hospital's petition shows that prescription has run against Hanover so the trial court's judgment sustaining the exception is affirmed. But because the hospital has argued circumstances that might support a suspension of prescription under the maxim of contra non valentem, we remand and give plaintiff thirty (30) days to amend its petition. If the plaintiff does not comply or if the amended petition does not cure the defect, the suit against Hanover will be dismissed with prejudice.
Davenport Insurance Agency. Like the Givenses, Davenport received notice but did not participate in the wrongful payment. The judgment sustaining the exception of no right or no cause of action is affirmed. However, the petition alleges facts that might support liability on an independent promise to pay a debt. LSA-C.C. art. 1847. We remand and give plaintiff thirty (30) days to amend its petition. We pretermit discussion of the exception of prescription because if the plaintiff succeeds in stating a cause of action, a different prescriptive period will apply. If it fails to do so, or fails to comply with this order, then the suit will be dismissed on the exception of no cause of action, and the issue of prescription will not be reached.
The judgment dismissing Mr. and Mrs. Givens from the suit is affirmed. The judgment sustaining Hanover's exception of prescription and Davenport's exception of no cause of action is affirmed, but the judgment of dismissal as to these defendants is reversed. Plaintiff is hereby granted leave of thirty (30) days to amend its petition in a manner consistent with this opinion. Costs are assessed to the plaintiff, Richland Parish Hospital Service District No. 1, and to defendants Hanover Insurance Company and Davenport Insurance Agency, one-third each.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] The suit is apparently still alive with respect to the tutor and undertutor, who did not file exceptions.
[2] LSA-R.S. 9:4751-4755, added by LSA-Acts 1970, No. 409.
[3] § 4752. Privilege on net proceeds collected from third party in favor of hospitals for services and supplies furnished injured persons

A hospital that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such hospital on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person. Provided, however, the privilege of an attorney shall have precedence over the privilege created under this section.
[4] § 4753. Written notice

The privilege created herein shall become effective if, prior to the payment of insurance proceeds, or to the payment of any judgment, settlement, or compromise on account of injuries, a written notice containing the name and address of the injured person, the date the injury was incurred, the name and location of the interested hospital, and the name of the person alleged to be liable to the injured person on account of the injuries received, shall be mailed by the interested hospital, certified mail, return receipt requested, to the injured person, to his attorney, to the person alleged to be liable to the injured person on account of the injuries sustained, to any insurance carrier which has insured such person against liability, and to any insurance company obligated by contract to pay indemnity or compensation to the injured person. This privilege shall be effective against all persons given notice according to the provisions hereof, and shall not be defeated nor rendered ineffective as against any person that has been given such notice, because of failure to give such notice to all those persons named herein.
This section does not define an "insurance carrier," and this impreciseness could have been a major source of conflict for Davenport and Leopold.
[5] § 4754. Failure to pay over monies after notice

Any person, who, having received notice in accordance with the provisions hereof, pays over any monies subject to the privilege created herein, to any injured person, or to the attorney, heirs, or legal representatives of any injured person, shall be liable to the licensed hospital having such privilege for the amount thereof, not to exceed the net amount paid.
[6] The hospital argued that its right to enforce the privilege was coextensive with the principal debt, or three years. LSA-C.C. art. 3494(1). This is not true. A privilege often prescribes before the principal obligation does. An employee's action for back pay prescribes in three years but his privilege lasts only one year. LSA-C.C. arts. 3494(1), 3206. The case of Toomer v. City of Lake Charles, 392 So.2d 794 (La.App. 3d Cir.1981), writ denied 396 So.2d 931 (La.1981), relied on by the hospital, does not hold otherwise. It holds that when the principal debt is extinguished, the accessory is likewise extinguished, regardless of the accessory's prescriptive period. LSA-C.C. art. 3277(3). Fortunately the instant case does not require us to set a prescriptive period on this privilege, because the legislature has not established one as they could.