916 So.2d 1071 (2005)
ALLEN & NORMAN, LLC
v.
Sandy CHAUVIN, Bone & Joint Surgical Clinic, Foot Specialists of Louisiana, Inc. and Hospital Service District No. 1 of the Parish of Terrebonne.
No. 2004 CA 0519.
Court of Appeal of Louisiana, First Circuit.
June 29, 2005.
*1072 Keith M. Whipple, Houma, Counsel for Defendant/Appellant Bone & Joint Surgical Clinic.
Sandy Chauvin, Houma, Pro Se for Defendant/Appellee.
Before: PARRO, KUHN, and WELCH, JJ.
KUHN, J.
Defendant-appellant, the Bone & Joint Surgical Clinic (the Clinic), provider of medical services to defendant-appellee, Sandy Chauvin, appeals a judgment rendered in a concursus proceeding, denying its claim to proceeds from Chauvin's settlement with a tortfeasor's employer's insurer, which had been deposited into the registry of the court by her attorneys, Allen & Norman, L.L.C. We reverse and render.

FACTUAL AND PROCEDURAL BACKGROUND
In October 1997, Chauvin began receiving medical treatment from a physician with the Clinic for injuries to her wrist, lower back, neck, and leg that she sustained in a motor vehicle accident with Lillian Smith, which occurred in the course and scope of Chauvin's employment with Wendy's Hamburgers (Wendy's) as she was returning to Houma from a training seminar in New Orleans. In April 1998, Chauvin filed a lawsuit in district court against Lillian Smith, Smith's employer, and its insurer (the Smith defendants), averring that Lillian Smith, as the negligent operator of the vehicle which had collided into Chauvin's vehicle, and the other Smith defendants were liable to her for the damages she had sustained. Thereafter, the Clinic notified Chauvin's attorney of its privilege for the fees associated with the Clinic's treatment of Chauvin on the net amount of any proceeds Chauvin *1073 received as a result of her claims against the Smith defendants. On December 1, 2001, Chauvin settled her claims against the Smith defendants for $23,500.00, which was placed in a trust account by her attorneys. The attorneys then filed this concursus proceeding and, after deducting a fee and legal expenses, deposited the net settlement proceeds of $14,875.87 into the court's registry, naming as defendants Chauvin and the Clinic.[1]
After a hearing, the trial court concluded that the Clinic had been fully paid in accordance with statutory requirements and ordered payment of the proceeds in the court's registry to Chauvin after deduction of court costs. A judgment in conformity with the trial court's determination was signed. The Clinic suspensively appeals.

DISCUSSION
Initially, we note a concursus proceeding is one in which two or more persons having competing claims to money are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding. La. C.C.P. art. 4651. The primary purpose of the proceeding is to protect the stakeholder from multiple liability, from conflicting claims, and from the vexation attending involvement in multiple litigation in which the stakeholder may have no direct interest. Chevron U.S.A., Inc. v. Oliver, 590 So.2d 1248, 1250 (La.App. 1st Cir.1991), writ denied, 597 So.2d 1028 (La.1992). A concursus contemplates a proceeding which leads to a single judgment adjudicating all issues between the parties. Id.
The Clinic bases its entitlement to a portion of the net settlement proceeds deposited in the court's registry on the privilege established by La. R.S. 9:4752, which states in pertinent part:
A health care provider . . . that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under any contract providing for indemnity or compensation to the injured person.
In support of her contention of entitlement to the entire net settlement proceeds, Chauvin relies on La. R.S. 23:1034.2, which provides for the establishment of a reimbursement schedule to persons who render medical treatment to workers' compensation claimants and which provided in part:[2]
A. The director of the office of workers' compensation administration shall establish and promulgate a reimbursement schedule for drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal and due under the Workers' Compensation Act and applicable to any person or corporation who renders such care, services, or treatment or provides such drugs or supplies to any person *1074 covered by Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950.
B. The director shall adopt, in accordance with the Administrative Procedure Act, rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.
C. The reimbursement schedule shall include charges limited to the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies. Any necessary adjustments to the reimbursement schedule adopted and established in accordance with the provisions of this Section may be made annually. . . .
D. Fees in excess of the reimbursement schedule shall not be recoverable against the employee, employer, or workers' compensation insurer. (Footnote omitted.)
The evidence establishes that Wendy's workers' compensation insurer paid the Clinic a total of $5,266.80 for the medical services and supplies that the Clinic had provided to Chauvin. Applying La. R.S. 23:1034.2 D, the trial court concluded that the Clinic could not recover from the net settlement proceeds any fees for medical services in excess of the reimbursement schedule. And in the absence of any contrary evidence, the trial court found that the payment to the Clinic by Wendy's workers' compensation insurer was the full amount required under La. R.S. 23:1034.2. Thus, the trial court determined that the Clinic was not entitled to any of the net settlement proceeds that were on deposit in the court's registry and ordered that they be paid to Chauvin.
The Clinic maintains that because it proved it had furnished services and supplies to Chauvin and timely provided Chauvin's attorneys with written notice,[3] it has perfected a privilege created by La. R.S. 9:4752 and, therefore, is entitled to a portion of the net settlement proceeds.
The meaning and intent of a law is determined by consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Denham Springs Economic Dev. Dist. v. All Taxpayers, Property Owners, XXXX-XXXX, pp. 13-14 (La.2/4/05), 894 So.2d 325, 334.
Subsection D of La. R.S. 23:1034.2 broadly states that fees in excess of the reimbursement schedule are not recoverable against an employee. But subsection A mandates the establishment and promulgation of a reimbursement schedule for medical treatment recognized as "legal and due under the Workers' Compensation Act" and states that the reimbursement schedule is "applicable to any person ... who renders such ... treatment ... to any person covered by Chapter 10 of Title *1075 23 of the Louisiana Revised Statutes of 1950." Reading La. R.S. 23:1034.2 in its entirety and subsections D and A in pari materia, it is clear that subsection D is circumscribed by subsection A. Thus, the reference in subsection D to "the reimbursement schedule" is to that reimbursement schedule to be established by the authority granted in subsection A, and it applies to a fee for medical treatment that is due under the Workers' Compensation Act, which treatment has been rendered by a health care provider to those persons covered by the workers' compensation laws. La. C.C. arts. 9, 10; La. R.S. 1:4.
Although Chauvin was in the course and scope of her employment with Wendy's when the accident occurred, the settlement proceeds at issue in this case were not derived from her claim for workers' compensation benefits. Instead, the proceeds were attributable to the liability of Lillian Smith  a third person under the Workers' Compensation Act  for Lillian Smith's tortious conduct, which happened while Chauvin was in the course and scope of her employment with Wendy's.[4]
Because Chauvin's injuries result from a third party's tortious actions, and the health care provider seeks to enforce its privilege on the net amount payable to the injured person, we conclude the medical treatment furnished by the Clinic does not constitute medical treatment exclusively "due under the Workers' Compensation Act" as contemplated by La. R.S. 23:1034.2 A. Therefore, the limitation of Subsection D of La. R.S. 23:1034.2 on the recovery of fees in excess of the reimbursement schedule is inapplicable to the Clinic's claim in this concursus proceeding. Accordingly, the trial court legally erred in concluding that the Clinic's right to recover charges for the medical services and supplies that were furnished to Chauvin was limited by the reimbursement schedule established pursuant to the Workers' Compensation Act.
Since the Clinic complied with the notice requirements and effectuated its privilege of La. R.S. 9:4752, we must determine the amount subject to the privilege. At the trial on the merits, the Clinic admitted into evidence descriptions of and the date that services had been rendered and supplies provided to Chauvin. The Clinic submitted a statement showing a remaining balance of $12,444.37 due on Chauvin's account.[5] An itemized bill showed medical services and supplies furnished by the Clinic totaled $14,185.00. Payments by Wendy's workers' compensation insurer in the total amount of $5,266.80 had been applied by the Clinic to Chauvin's account as well as a payment of $500.00 by Chauvin's former attorney. Her account had also been credited $47.84 by the Clinic for a late fee adjustment. Thus, the total credit of $5,814.64, deducted from the total charges of $14,185.00, established that the outstanding balance on Chauvin's account with the Clinic for *1076 medical services and supplies was $8,370.36. The difference between the remaining balance due of $12,444.37 and the outstanding balance of $8,370.36 is $4,074.01, which represents the amount of charges imposed on the account for Chauvin's failure to timely pay the outstanding balance.
The privilege created by La. R.S. 9:4752 for the services and supplies furnished is "for the reasonable charges or fees" of a health care provider. It is established in favor of a health care provider who furnishes services or supplies to an injured person. While the Clinic urges entitlement to $4,074.01 for those fees assessed as late fee charges on the outstanding balance, we decline to find the scope of the privilege encompasses charges or fees that are not directly related to health care services or to the person's injury.
As an alternative basis for its entitlement to recovery of $4,074.01 in late fees, the Clinic urged the trial court to find that Chauvin agreed to pay the charges. In support of this contention, the Clinic offered a patient approval form, allegedly signed by Chauvin on October 21, 1997, in which she assumed responsibility for, among other things, a charge of "interest at the rate of eighteen percent . . . per annum [on] any amounts 30 days past due from the previous month."
The trial court found that Chauvin had not signed the October 21, 1997 form and, therefore, was not obligated to pay the late fee charges. On appeal, the Clinic maintains that the trial court was manifestly erroneous in so finding and requests that this court examine the signature affixed to the October 21, 1997 form as well as Chauvin's Louisiana driver's license. Because the Clinic as an alternative basis for recovery of $4,074.01 urged that Chauvin agreed to pay the late fees, this factual finding was not affected by trial court's failure to apply La. R.S. 9:4752. Thus, on appeal this finding, like all factual findings, is reviewed under the manifest error/clearly wrong standard of review. Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 881-83 (La.1993).
It is clear that the two signatures are not so similar that appellate scrutiny contradicts Chauvin's testimony denying that she signed the October 21, 1997 form. And a review of the two signatures does not show Chauvin's testimony to be so implausible that the trial court's decision must be discredited as unreasonable. A reasonable factual basis exists for the trial court's finding that Chauvin did not sign the patient approval form, and it is not manifestly erroneous. See Stobart, 617 So.2d at 881-83. Accordingly, the Clinic has not proven its entitlement to $4,074.01 for its imposition of the late fee charges.
Because the Clinic proved that $8,370.36 of the balance in Chauvin's account was secured by its privilege under La. R.S. 9:4752, we conclude that the Clinic is entitled to that amount of the net settlement proceeds on deposit in the court's registry.

DECREE
For these reasons, the trial court's judgment, ordering the Terrebonne Parish Clerk of Court to pay to Chauvin, after the deduction of court costs, all money previously deposited into the registry of the court in connection with this matter, is reversed. Judgment is rendered, ordering the Terrebonne Parish Clerk of Court, after deduction of court costs, to pay $8,370.36 to the Clinic, together with fifty-six percent of the interest accrued on the amount on deposit[6] since the filing of this *1077 concursus proceeding. The Terrebonne Parish Clerk of Court is ordered to pay to Sandy Chauvin all remaining sums, including the remaining forty-four percent of the accrued interest since the filing of the petition invoking this concursus proceeding. Appeal costs are assessed against Sandy Chauvin.
REVERSED AND RENDERED.
PARRO, J., concurs and assigns reasons.
WELCH, J., concurs for reasons assigned by J. PARRO.
PARRO, J., concurring.
As recognized by the majority, LSA-R.S. 23:1034.2(A) provides for the establishment of a reimbursement schedule for medical treatment recognized by the laws of this state as legal and due "under the Workers' Compensation Act," and this schedule is applicable to any person or corporation who renders such services to any person covered by the Act. LSA-R.S. 23:1034.2(D) further provides that fees in excess of the reimbursement schedule shall not be recoverable against the "employee, employer, or workers' compensation insurer." Under the facts of this case, there is no contractual or statutory prohibition against the health care provider recovering such fees as the result of a privilege on the net proceeds payable to the injured employee by a third person[1] responsible for such injury. On the contrary, LSA-R.S. 9:4752 expressly provides the health care provider with such a privilege for its reasonable charges or fees.
In this case, the trial court found that the Bone and Joint Surgical Clinic (Clinic) was entitled to a privilege on the funds in the registry of the court, and this finding has not been challenged on appeal. However, the trial court did not allow recovery by the Clinic because the unpaid charges were in excess of the reimbursement schedule for workers' compensation claims and the prohibition of LSA-R.S. 23:1034.2(D) precluded recovery from Sandy Chauvin (Chauvin), the employee. I agree with the majority that the trial court legally erred in so finding.
By virtue of the services rendered to Chauvin, the Clinic obtained a privilege on the net amount payable to Chauvin out of the total amount of any recovery collected by settlement or compromise from the Smith defendants. The privilege recognized by LSA-R.S. 9:4752 is not a cause of action in itself but an accessory right, a form of security for ultimate payment. See LSA-C.C. arts. 1913, 3186; Richland Parish Hospital Service District # 2 v. Hanover Insurance Companies, 486 So.2d 1079, 1083 (La.App. 2nd Cir.1986). Because LSA-R.S. 9:4752 places a privilege on the "fund,"[2] the Clinic's claim for recovery of its fees for medical services and supplies provided to Chauvin in excess of the reimbursement schedule does not constitute a personal cause of action against the "employee," but an in rem action involving the rights of the parties with respect to the fund, i.e., the "net amount" payable to Chauvin, that was deposited in the registry *1078 of the court.[3] Accordingly, I agree that the provisions of LSA-R.S. 23:1034.2(D) are not applicable in this concursus matter, and the Clinic should be entitled to satisfy its privilege according to applicable law. Because interest or charges for late payments are not expressly included in the heath care provider's privilege as established by LSA-R.S. 9:4752, I agree with the majority's finding that the scope of the privilege does not encompass interest or charges for late payments since such charges are not for health care services. In so finding, I believe, therefore, that it is not appropriate in the context of this concursus proceeding to determine the merits of the Clinic's assignment of error relating to an alleged contract between the Clinic and Chauvin for the payment of interest on Chauvin's account.
For the foregoing reasons, I respectfully concur.
NOTES
[1] Other medical providers also named as defendants were voluntarily dismissed from the concursus proceeding after filing respective answers waiving any claim each may have had to the deposited proceeds.
[2] Louisiana Revised Statute 23:1034.2 was amended by 2004 La. Acts, No. 534, § 1, redesignating the text of subsection C as paragraph C(1). Other modifications by this amendment are not relevant or applicable to our disposition in this appeal.
[3] At all relevant and applicable times, La. R.S. 9:4753, which establishes how the health care provider's privilege becomes effective, provided:

The privilege created herein shall become effective if, prior to ... the payment of any... settlement ... or compromise on account of injuries, a written notice containing the name and address of the injured person [and] the name and location of the interested health care provider ... is mailed by the interested health care provider... certified mail, return receipt requested, to the injured person [or] to his attorney.... This privilege shall be effective against all persons given notice according to the provisions hereof, and shall not be defeated nor rendered ineffective as against any person that has been given such notice, because of failure to give such notice to all those persons named herein.
[4] See La. R.S. 23:1101 A & C (providing an employee a remedy to seek damages for his claim against a third party despite the payment of compensation benefits by the employer; and defining a third party to include any party who causes injury to an employee at the time of his employment when the employer is obligated to pay compensation benefits).
[5] In its answer to the concursus petition, the Clinic stated that the amount to which it was entitled from the net settlement proceeds deposited in the court's registry was $12,108.04. The difference of $336.33 between the amount shown by the evidence and the amount pled is apparently attributable to a monthly service charge of $112.11 added to the outstanding balance over the three months between the time the answer was filed and the hearing on the merits.
[6] Louisiana Revised Statute 39:1231 A directs that funds deposited into the court's registry shall be deposited in a bank selected by the clerk of court, and that interest earned on the deposited money accrues to the parties decreed to be entitled to ownership. Since satisfaction of the Clinic's privilege of $8,370.36 amounts to approximately fifty-six percent of the total net settlement proceeds of $14,875.87 on deposit in the court's registry, we award that percentage of the amount of interest to the Clinic.
[1] See LSA-R.S. 23:1101(C).
[2] See Richland Parish Hospital Service District # 2, 486 So.2d at 1082-83.
[3] See Hibernia National Bank v. Orleans Regional Hospital, L.L.C., 28,982 (La.App. 2nd Cir.11/1/96), 682 So.2d 1291, 1295.