Judgment rendered August 11, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,086-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IRMA RABUN, INDIVIDUALLY              Plaintiff-Appellant
AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED


versus


ST. FRANCIS MEDICAL                   Defendant-Appellee
CENTER, INC.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2014-1389


Honorable Daniel J. Ellender, Judge


* * * * *

HOFFOSS DEVALL, LLC                   Counsel for Appellants
By: J. Lee Hoffoss, Jr.
    Claude P. Devall
    Donald W. McKnight


MARTZELL, BICKFORD & CENTOLA, PC
By: Scott R. Bickford
    Lawrence J. Centola, III


PARKER ALEXANDER, LLC
By: Kevin D. Alexander


LABORDE EARLES LAW FIRM
By: Derrick Earles

BREAZEALE, SACHSE & WILSON, LLP  Counsel for Appellee
By: David R. Kelly
  Thomas R. Temple, Jr.
  Chris D. Billings
  Joseph J. Cefalu, III


\* \* \* \* \*


Before PITMAN, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

This case has been before this Court two previous times.[1] The instant appeal is from the trial court's judgment that sustained an exception of prescription filed by defendant St. Francis Medical Center and dismissed with prejudice the claim filed by the named class representative, Irma Rabun. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS/PROCEDURAL BACKGROUND

On February 1, 2013, Irma Rabun sustained injuries in an automobile accident caused by a third party. She sought medical treatment at St. Francis Medical Center, Inc. ("St. Francis"), on the same day.

Ms. Rabun had health insurance with United Healthcare Insurance Company ("United Health"), and St. Francis was a contracted health care provider, which would have allowed for a discounted rate on medical services. However, St. Francis chose not to file a claim with United Health, but instead, on March 21, 2013, filed a medical provider's lien pursuant to La. R.S. 9:4751-4755 against any settlement proceeds Ms. Rabun received from the insurer of the at-fault driver. This lien was for the full, undiscounted amount of the hospital charges, which amounted to $9,452.00.

On November 7, 2013, State Farm Fire and Casualty Company sent a check to Ms. Rabun's attorney payable to St. Francis in the amount of $9,452.00. Because of the medical lien, Ms. Rabun's attorney placed the

---

[1] *See, Rabun v. St. Francis Medical Center, Inc.*, 50,849 (La. App. 2 Cir. 8/10/16), 206 So. 3d 323 (*Rabun I*); *on subsequent appeal*, *Rabun v. St. Francis Medical Center, Inc.*, 52,658 (La. App. 2 Cir. 6/26/19), 277 So. 3d 455, *writ denied*, 2019-1426 (La. 11/5/19), 281 So. 3d 674 (*Rabun II*).

check in escrow, where it remains. Allegedly, the lien issued by St. Francis is still in effect, preventing the disbursement of the funds.

A class action petition for damages, breach of contract, declaratory relief, and injunctive relief was filed on May 9, 2014, against St. Francis by Ms. Rabun, individually and as representative of a class "on behalf of all others similarly situated." According to Ms. Rabun, *inter alia*, St. Francis violated the Health Care Consumer Billing Disclosure Protection Act (the "Balance Billing Act" or "BBA") by:

- failing to file claims with health insurance issuers, failing to accept payments from health insurers, and, attempting to collect and collecting from patients amounts in excess of those legally owed by those patients, contrary to its contractual obligation to provide medical care and treatment to subscribers and to accept the contracted reimbursement rate provided for by the member provider agreements and/or health insurance provider contracts as payment in full;

- hiring third party collection agencies to refuse the health insurance of petitioner and class members and/or payment by petitioner and class members as full payment, and to collect directly or indirectly from petitioner and class members by filing liens and maintaining actions at law against petition and class members; and

- breaching contracts entered into by the hospital with petitioner and class members for the provision of medical services by attempting to collect and/or collecting from petitioner and other members of the class more than petitioner and other class members were legally obligated to pay.

In response, St. Francis filed a motion for summary judgment in which it raised a number of issues. Summary judgment was granted by the trial court on November 13, 2015. This adverse ruling was appealed by Ms. Rabun, and on April 10, 2016, this Court issued its opinion in *Rabun I*,

2

reversing summary judgment and remanding the matter for further proceedings.

Upon remand, the matter was certified as a class action, with Ms. Rabun being appointed as class representative. St. Francis appealed the class certification, which was affirmed by this Court in *Rabun II*. Thereafter, on October 16, 2020, St. Francis filed an exception of prescription as to the claim of the named plaintiff, Irma Rabun.

St. Francis pointed out that, in her petition, Ms. Rabun alleged the notice of lien was sent to her attorney on March 21, 2013. The class action petition alleging violations of the Balance Billing Act by St. Francis, including "maintaining an action at law" against Ms. Rabun by asserting a lien for the undiscounted cost of the medical expenses charged by the hospital, was not filed until May 9, 2014. As recently held by the Louisiana Supreme Court in *DePhillips v. Hospital Service District No. 1 of Tangipahoa Parish*, 2019-01496 (La. 7/9/20), ___ So. 3d ___, 2020 WL 3867212, Balance Billing Act claims brought by insured patients against contracted healthcare providers are delictual in nature and, as such, are subject to a one-year prescriptive period. Therefore, argued St. Francis, because Ms. Rabun filed suit more than one year after the issuance of the lien, her claims have prescribed.

Ms. Rabun urged that her claims were not prescribed. She acknowledged the supreme court's recent *DePhillips* opinion, but pointed out that, despite finding that claims under the Balance Billing Act are subject to a one-year prescriptive period, the court did not reach the issue of when prescription begins to run under the Act. According to Ms. Rabun, prescription does not begin to run until there is a recovery (payment) from

the third party—in other words, an amount to which the lien can be attached. Until that time, whether the lien will ultimately have any effect or cause any recoverable damages is merely speculative. Ms. Rabun did not settle her third-party action and recover damages until November 2013. Her action was filed on May 9, 2014, well within one year of the lien attaching to any settlement funds. Therefore, her claims had not prescribed.

A hearing was held on December 9, 2020. The trial court granted the exception filed by St. Francis and dismissed Ms. Rabun's individual claims with prejudice, based on its finding that her claims were untimely since they had not been filed within one year of the issuance of the medical lien. It is from this judgment that Ms. Rabun has appealed.

## DISCUSSION

On appeal, Ms. Rabun contends that her Balance Billing Act claims have not yet prescribed since the lien filed by St. Francis has been neither paid nor withdrawn. Because the lien is still in effect, St. Francis is continuing to maintain the "action at law" of the lien by still attempting to collect from her in contravention of the Balance Billing Act.

Ms. Rabun cites several cases involving continuing torts, *Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992); and, *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So. 2d 531 (La. 1982), in support of her argument that the wrongful conduct (the attempt to collect) of a contracted provider who has filed a medical lien begins when the lien letter is sent and continues until the lien is either withdrawn or paid. According to Ms. Rabun, as long as the medical lien is pending, the contracted provider is "attempting to collect," something specifically prohibited by La. R.S. 22:1874(A)(1).

4

Ms. Rabun also reiterates the argument she made before the trial court, i.e., that her action was timely because it was filed within one year of the settlement of her claim against the at-fault third party and insurer.

On the other hand, St. Francis urges this Court to affirm the trial court's judgment. Since Ms. Rabun's individual claims were prescribed on the face of the petition, she had the burden of presenting evidence that showed a suspension or interruption of the prescriptive period. Because Ms. Rabun failed to do so, the trial court properly granted the exception of prescription and dismissed her claims with prejudice.

In support of its argument that the one-year prescriptive period applicable to Ms. Rabun's claims began to run when the hospital sent the medical lien letter to her attorney on March 21, 2013, St. Francis relies upon *DePhillips, supra* (in which the Louisiana Supreme Court held that the prescriptive period for a Balance Billing Act claim brought by an insured patient against a contracted health care provider is one year); *Anderson v. Ochsner Health System*, 2013-2970 (La. 7/1/14), 172 So. 3d 579 (in which the Louisiana Supreme Court held that an individual consumer has a private right of action for a violation of the Balance Billing Act); and, *Stewart v. Ruston Louisiana Hospital Co., LLC*, Civ. No. 3:14-0083, 2016 WL 1715192 (W.D. La. Apr. 27, 2016) (in which the federal district court held that the one-year prescriptive period in such a case began when the hospital filed a lien on a potential tort recovery).

The Balance Billing Act, La. R.S. 22:1871, *et seq.*, prohibits a contracted health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement

rate, a practice referred to as "balance billing." La. R.S. 22:1874 provides, in pertinent part:

> A.(1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.
>
> (2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer or an explanation of benefits as an amount for which the enrollee or insured is liable. …
>
> B. No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or insured after a health insurance issuer determines that the health insurance issuer is not liable for the health care services rendered.

In *DePhillips*, *supra* at *3-4, the Louisiana Supreme Court recognized that the Balance Billing Act failed to set forth an applicable prescriptive period, thus requiring the Court to properly characterize the nature of the plaintiff's cause of action in order to determine the correct prescriptive period applicable to the claims. In classifying the nature of the duty breached by a contracted health care provider under the Balanced Billing Act as delictual in nature, the Court analyzed the statute in question, as well as the law in effect at the time of the enactment of the Balance Billing Act; *Anderson, supra* at 583-85 (in which the Court held that: an insured has an implied right of action under the Balance Billing Act grounded in individual restitution where a health care provider collects or attempts to collect

6

amounts from the insured patient in excess of the contracted reimbursement rate; and, where a health care provider asserts a lien pursuant to La. R.S. 9:4751-4755 for the full amount of undiscounted charges, that practice is an "action at law" prohibited by La. R.S. 22:1874(B), entitling the insured patient to a private right of action under the express language of La. R.S. 22:1874(B)); and, *Emigh v. West Calcasieu Cameron Hospital*, 2013-2985 (La. 7/1/14), 145 So. 3d 369 (cited not for its holding, but for its underlying reasoning that negates the plaintiff's claim to be a third-party beneficiary to any contract such that his claim sounded in contract).

Speaking for the majority, Justice Crichton wrote:

> Pursuant to the Act, a contracted health care provider is prohibited from taking certain actions to collect amounts owed to the provider, including discount billing or dual billing a patient to collect amounts allegedly owed to the provider. La. R.S. 22:1874(A)(1)-(4). These duties are owed to "an enrollee or insured," a defined term that means "a person who is enrolled in or insured by a health insurance issuer for health insurance coverage." La. R.S. 22:1872(A)(11). In other words, by the plain language of the Act, this is a duty owed by *all* "contracted health care providers" to *all* "enrollees or insureds," and is not specific to any individual. It is a general duty imposed by statute and, thus, does not arise from any special obligation owed by [defendant health care provider] to [the plaintiff in this case]. *See, Smith* [*v. Citadel Ins. Co.*], 19-0052, p. 6, 285 So. 3d at 167. We therefore find the nature of the duty breached is delictual in nature, and the claims are subject to a one-year prescriptive period.

*DePhillips*, *supra* at \*4. Because the plaintiff's petition was silent as to the date of the alleged violation of the Balance Billing Act by the defendant health care provider, the supreme court's holding was limited to its determination that one year is the proper prescriptive period for Balance Billing Act claims brought by insured patients against contracted health care providers. *Id.* at \*7.

7

As to **when the one-year prescriptive period** for a Balance Billing Act claim **begins to run**, there are no Louisiana state court cases on point. However, a Louisiana federal district court has ruled on this issue, finding that claims identical to those asserted by Ms. Rabun are subject to a one-year prescriptive period that begins upon the issuance of the medical lien. *Stewart, supra*, at *7. The trial court in the instant case relied upon the rationale set forth in *Stewart* in granting the exception of prescription filed by St. Francis.

The plaintiffs in *Stewart, supra* urged the court to find that the health care provider's lien on their potential tort recoveries constituted a continuing tort. Relying on Louisiana jurisprudence distinguishing a continuing tort, which is where the operating cause of injury is a continuous one giving rise to successive damages, *Crump v. Sabine River Authority*, 1998-2326 (La. 6/29/99), 737 So. 2d 720, 726, from a continuation of the ill effects of the original, wrongful act, which does not create a continuing tort, *Id.* at 728, the court in *Stewart* held:

> [I]t is clear that the prescriptive period in this case began when NLMC filed a lien on a potential tort recovery. The lien was filed one time, and although the ill effects may be continually felt, the act at issue occurred but once. *See Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C.*, 2006-1557 (La. App. 3 Cir. 11/28/07), 981 So. 2d 23, 34 (citations omitted). Thus, the continuing tort doctrine is inapplicable. Because Plaintiffs had notice of the lien more than one year prior to filing suit, their cause of action under the Balance Billing Act has prescribed.

*Id*. at *7.

As argued by the plaintiffs in *Stewart*, Ms. Rabun argues that her claims are not prescribed because of the continued existence of the medical lien. The violation of the Balance Billing Act as alleged in her petition—St. Francis's attempt to collect amounts in excess of the contracted

8

reimbursement rate—occurred when the hospital issued the lien letter dated March 21, 2013, to Ms. Rabun's attorney. No allegations were made and no evidence was introduced that St. Francis has done anything other than the filing of the lien, which, as found by the court in *Stewart, supra*, does not constitute a continuous cause of injury giving rise to successive damages, but instead, is one original, wrongful act that has ill effects continuing therefrom.[2]

---

[2] As noted by this Court in *Howard v. Willis-Knighton Medical Center*, 40,634 (La. App. 2 Cir. 3/8/06),924 So. 2d 1245, 1253, *writs denied*, 2006-0850, 1064 (La. 6/14/06), 929 So. 2d 1268, 1271, a pre-Balance Billing Act class action lawsuit filed by patients alleging to be victims of the hospital's "unreasonable charges and collection processes" utilizing Louisiana's hospital lien statute:

> La. R.S. 9:4752 itself does not create a cause of action in favor of the hospital directly. . . The hospital is a creditor of the patient who incurs the bill; the patient is a creditor of the tortfeasor or his insurer that owes benefits to him. *Richland Parish Hospital Service District #2 v. Hanover Insurance Companies*, 486 So. 2d 1079 (La. App. 2 Cir. 1986). The privilege afforded by the statute is simply an accessory right to the primary obligation—a form of security for ultimate payment. *Richland, supra* at 1083. An accessory right or obligation may not exist without the coexistence of a primary obligation to which it lends support. *Louis Werner Saw Mill Co. v. White*, 16 So. 2d 666 (La. App. 2 Cir 1942), *rev'd on other grounds*, 205 La. 242, 17 So. 2d 264 (1944). Stated simply, the obligation of the patient to pay reasonable treatment charges is not incurred as a result of the lien, but arises out of the underlying contractual relationship between the hospital and the patient. Hence, although the statute affords a health care provider a privilege on the settlement proceeds for *reasonable charges or fees* by the health care provider, the charges or fees themselves do not arise from the privilege, but from the primary obligations between a health care provider and the patient. . . . *Spencer v. West*, 126 So. 2d 423 (La. App. 2 Cir. 1961).

Privileges become extinct: (1) by the extinction of the thing subject to the privilege; (2) by the creditor acquiring the thing subject to it; (3) by the extinction of debt which gave birth to it; and (4) by prescription. La. C.C. art. 3277. The debt "giving birth" to a medical lien privilege is a debt on open account. *Dauzart v. Financial Indemnity Insurance Company*, 2010-28 (La. App. 3 Cir. 6/2/10), 39 So. 3d 802, 805. The prescriptive period for a suit on an open account is three years. La. C.C. art. 3494; *Dauzart, supra.* A lien or privilege is only an accessory right to the claim or debt, providing security and payment by preference. *Howard, supra; Dauzart, supra; Toomer v. City of Lake Charles*, 392 So. 2d 74 (La. App. 3 Cir. 1980), *writ denied*, 396 So. 2d 931 (La. 1981). The lien has a life coextensive with that of the debt it is intended to secure. *Id.* When the debt or claim is extinguished by prescription, the privilege becomes extinct also, even if timely filed. *Dauzart, supra; Toomer, supra.*

Ms. Rabun had until March 21, 2014, to assert her claims under the Balance Billing Act.  Because her petition was not filed until May 9, 2014, more than one year after March 21, 2013, her individual claims under the Balance Billing Act have prescribed.  The trial court did not err in granting the exception of prescription filed by St. Francis.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed.  Costs are assessed to plaintiff, Irma Rabun, Individually and On Behalf of All Others Similarly Situated.

AFFIRMED.